# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GLENN TYLER CHRISTIE,<br>3433 Bloomington Pl.<br>The Villages, FL 32162 | |
| KIMBERLY MICHELLE WILSON,<br>105 Gilman Bend Road<br>Hayden, AL 35079 | |
| NATHAN FREDERICK BALOY,<br>2121 North Squire Ave.<br>Tempe, AZ 85281 | |
| ROBERT CHARLES NAGEL,<br>3150 Buffalo Trail<br>Flagstaff, AZ 86005 | COMPLAINT<br><br>Civil Action No. 1:25-cv-932 |
| TIMOTHY MICHAEL SCHOMAKER,<br>6902 E Culver St<br>Mesa, AZ 85207 | |
| CAROLYN ANN NAGEL,<br>2808 East Avenue, R12<br>Palmdale, CA 93550 | |
| CHRISTOPHER PIUS NAGEL,<br>113 Fallbrook Ave.<br>Newbury Park, CA 91320 | |
| JACKIE DOUGLAS SWOGGER,<br>7830 Klusman Ave<br>Rancho Cucamonga, CA 91730 | |
| JACKIE DOUGLAS SWOGGER, SR.,<br>7830 Klusman Ave<br>Rancho Cucamonga, CA 91730 | |
| MARY MARGARET WILMES,<br>13142 Nina Place<br>Garden Grove, CA 92843 | |

1

JANET LYNN DOUGLASS,
1219 Gard Place
Loveland, CO 80537

RAEANN BETH NAGEL,
4615 S Akron St
Greenwood Village, CO 80111

JANET LOUISE CHRISTIE,
3433 Bloomington Pl
The Villages, FL 32162

KRISTINA LACAVA NEVINS,
2250 Spring Creek Circle NE
Palm Bay, FL 32905

LESANDRO EDWIN SANTIAGO,
3497 Coquina Key Dr. SE
St. Petersburg, FL 33705

WILLIAM CHRISTIAN NEVINS,
2250 Spring Creek Circle NE
Palm Bay, FL 32905

GREGORY ANTHONY RUSSELL,
2882 Wynfair Dr.
Marietta, GA 30062

JOSEPH MARTIN JACKSON,
5270 Quad J Rd
Shreveport, LA 71107

CRYSTAL LYNN LOVE,
30344 Pipers Lane
Farmington Hills, MI 48334

BERNARDINE CLEMENTINE NAGEL,
511 W. Turnpike Ave.
Bismark, ND 58501

GERARD PAUL NAGEL,
3405 89th Avenue S.E.
Bismarck, ND 58504

MICHAEL JOHN NAGEL,
511 W. Turnpike Ave.
Bismark, ND 58501

PATRICK JAMES NAGEL,
4709 Maltby St
Bismarck, ND 58503

MELISSA DAWN JACKSON TIMKO,
4907 State Rt 151
Mingo Junction, OH 43938

SHEILA LYNN JACKSON,
4907 State Route 151
Mingo Junction, OH 43938

WILLIAM RICHARD JACKSON,
4907 State Route 151
Mingo Junction, OH 43938

BRYANT KEITH WHITE,
337 Shadow Lawn Dr
Eagle Point, OR 97524

GEORGIANA WHITE,
1228 Hazel Street
Central Point, OR 97502

CHAD ALLEN MCCULLOUGH,
1123 Russell Ave.
Fountain Hill, PA 18015

RICKY LEE MORSE,
414 Arnold Ave.
Sumter, SC 29150

STEVEN NEAL WILSON,
754 Glenn Springs Road
Lawrenceburg, TN 38464

SANDRA OLIVIA BOUSE,
7043 Teton Ridge
San Antonio, TX 78233

SCOTT ELLIOT RIKARD, and
777 E Apple Blossom Way
Fruit Heights, UT 84037

TERESE MARIE HUNNEL,
848 S. Douglas Dr
Brigham City, UT 84302

     *Plaintiffs*,

   v.

THE UNITED STATES OF AMERICA,

COMPTROLLER GENERAL OF THE
UNITED STATES, in his official capacity
Government Accountability Office
441 G Street, N.W.
Washington, DC 20548,

SPECIAL MASTER,
U.S. VICTIMS OF STATE SPONSORED
TERRORISM FUND, in her official capacity
950 Pennsylvania Avenue, N.W.
Washington, DC 20530, and

THE UNITED STATES DEPARTMENT
OF JUSTICE
950 Pennsylvania Avenue, NW
Washington, DC 20530,

     *Defendants*.

4

**COMPLAINT**

Plaintiffs, through undersigned counsel, respectfully bring this action against the United States of America, the Comptroller General of the United States, the Special Master of the U.S. Victims of State Sponsored Terrorism Fund, and the United States Department of Justice. These claims stem from actions taken by the Comptroller General of the United States and the Special Master of the U.S. Victims of State Sponsored Terrorism Fund in carrying out their obligations under the Fairness for 9/11 Families Act.

**JURISDICTION**

1.      Jurisdiction in this Court arises pursuant to 28 U.S.C. § 1331 and § 1361.

2.      Plaintiffs bring their cause of action pursuant to the Administrative Procedure Act, 5 U.S.C. § 701 *et seq*..

3.      Plaintiffs seek relief under the Administrative Procedure Act, 5 U.S.C. § 701 *et seq*., the Mandamus Act, 28 U.S.C. § 1361, and the Declaratory Judgment Act, 28 U.S.C. § 2201.

4.      Venue in this Court is proper because, upon information and belief, one or more defendants reside in the District of Columbia, and a substantial part of the events giving rise to the claim occurred within the District of Columbia. *See* 28 U.S.C. § 1391(e)(1).

**PARTIES**

5.      Plaintiffs in this action are veterans of the United States Armed Forces who were injured in the June 25, 1996 terrorist attack on the Khobar Towers housing complex in Saudi Arabia (the "Khobar Towers Bombing"), and their immediate family members.

6.      Prior to the enactment of the Fairness for 9/11 Families Act on December 29, 2022, Plaintiffs had already received default judgements, applied to the U.S. Victims of State

5

Sponsored Terrorism Fund ("USVSST Fund" or "Fund") on the basis of those judgments, and their claims had been deemed eligible for compensation through the Fund.

7.      Defendant the Comptroller General of the United States ("Comptroller General") is the head of the Government Accountability Office ("GAO"), which provides Congress and executive committees with financial information, reports, and recommendations.

8.      Defendant the Special Master of the U.S. USVSST Fund (the "Special Master") administers the Fund consistent with the Justice for United States Victims of State Sponsored Terrorism Act and its amendments. 34 U.S.C. § 20144.

9.      Defendant the Department of Justice ("DOJ") provides staff which support the Special Master and the Fund.

## STATEMENT OF FACTS

**Background**

10.     On June 25, 1996, at approximately 10:20 p.m. local time, members of the terrorist organization, Hezbollah Al-Hejaz, detonated a large truck bomb on the perimeter of a building used as the living quarters for U.S. Air Force personnel in Khobar, Saudi Arabia, killing nineteen people and injuring hundreds more, including Plaintiffs.

11.     Plaintiffs subsequently received default judgments against the Islamic Republic of Iran for their material support and planning of the Khobar Towers Bombing.

12.     In 2015 Congress passed the Justice for United States Victims of State Sponsored Terrorism Act ("USVSST Act"), which created the U.S. Victims of State Sponsored Terrorism Fund in order to compensate certain victims of acts of international terrorism. *See* 34 U.S. Code § 20144.

13.     The Special Master who oversees the Fund is appointed by the Attorney General and administers the Fund with the support of DOJ employees.

14.    The Special Master determines eligibility for each victim who applies to the Fund based on the requirements of 34 U.S.C. § 20144(c).

15.    The Fund is required to make regular distributions to victims with eligible claims, and generally does so on a pro rata basis in order to ensure that victims receive compensation in an equitable manner.

16.    The Special Master has the authority to determine the amount of these regular distributions.

17.    In addition to these periodic regular distributions, Congress has also previously mandated "lump sum catch-up" payments ("Catch-Up Payments") for certain claimants.

18.    Unlike the periodic distributions which are calculated by the Special Master, these Congressionally directed Catch-Up Payments are calculated by the Comptroller General, and the Special Master must issue those payments consistent with the Comptroller General's calculations. 34 U.S.C. §§ 20144(d)(4)(D)(iv)(II).

19.    In such cases, the Special Master must "authorize" Catch-Up Payments consistent with the Comptroller General's calculations by allocating those amounts and holding them aside until they are disbursed. *See Braun v. United States*, 31 F.4th 793, 800 (D.C. Circuit 2022) (opining that "authoriz[ing]… payment" occurs "when the fund issues a notice allocating a specific payment amount for distribution.").

20.    Plaintiffs in the instant case applied to the USVSST Fund and their eligible claims were accepted by the Special Master prior to December 29, 2022.

**The Fairness for 9/11 Families Act**

21.     On December 29, 2022, President Joseph R. Biden signed the Fairness for 9/11 Families Act ("Fairness Act") into law, amending the United States Victims of State Sponsored Terrorism Act for the third time.

22.     The Fairness Act instructed the Fund to make another Catch-Up Payment, and in order to facilitate that, updated or added to the USVSST Act's provisions in a few ways relevant to the case at hand:

   a.   Congress appropriated $3 billion to a reserve fund within the USVSST Fund in order to make these Catch-Up Payments. 34 U.S.C. § 20144(d)(4)(D)(iv)(III).

   b.   The Comptroller General was required by the Fairness Act to calculate the amount of the proposed Catch-Up Payment for "each 1983 Beirut barracks bombing victim" and "each 1996 Khobar Towers bombing victim" and submit a report to Congress with these amounts. *Id.*, at § 20144(d)(4)(D)(iii).[1]

   c.   To effect these Catch-Up Payments, the Congress mandated "the Special Master shall authorize" the Catch-Up Payments in amounts equal to those reported by the Comptroller General. *Id.*, at § 20144(d)(4)(D)(iv)(II).

   d.   The Fairness Act extended the deadline for victims of the 1983 Beirut Barracks and Khobar Towers Bombings who obtained final judgments against a state sponsor of terrorism prior to the Fairness Act's enactment to submit an application for payment to the USVSST Fund. H.R. 2617-1649, Div. MM, Sec. 101(b)(2); 34 U.S.C. § 20144(c)(3)(A)(ii)(II).

---

[1]   These terms are defined to include each claimant "who has an eligible claim under subsection (c) that arises out of "these bombing incidents." 34 U.S.C. § 20144(j)(15), (16).

23.     In this way, Congress appropriated funds for this particular purpose, instructed the Comptroller General to calculate how much each eligible victim of the Khobar Towers Bombing should receive, and directed the Special Master "shall authorize" Catch-Up Payments from that reserve fund in accordance with the Comptroller General's figures.

24.     This reserve fund is to be terminated not later than 1 year after the Special Master disperses all Catch-Up Payments, at which point any funds remaining in the reserve fund are to be deposited into the USVSST Fund and become unavailable for other Catch-Up Payments. *Id*., at § 20144(d)(4)(D)(iv)(IV)(aa)-(bb).

**The GAO Misreads the Fairness Act and Creates an Additional Application Requirement**

25.     Prior to issuing its Report, the GAO published two Notices in the Federal Register discussing its planned methodology for estimating the Catch-Up Payments under the Fairness Act; the first on December 28, 2023,[2] and the second on July 9, 2024 ("2024 Notice").[3]

26.     In this July 9, 2024 Notice, for the first time, the GAO articulated its understanding that the Fairness Act only directed the GAO "to estimate catch-up payments for those who submitted eligible applications to the Fund between the date of enactment (Dec. 29, 2022), and June 27, 2023, which is the date by which claimants must have applied to the Fund to be considered for catch-up payments." 2024 Notice, at 56,376 n.3.

27.     It becomes clear that the GAO understood the Fairness Act to only extend Catch-Up Payments to applications which came into the USVSST Fund in the 180 days after enactment of the Act: "As discussed in footnote 3, section 101 directs us to estimate lump sum

_____

[2]  Notice of Planned Methodology for Estimating Lump Sum Catch-Up Payments to Eligible 1983 Beirut Barracks Bombing Victims and 1996 Khobar Towers Bombing Victims; Request for Comment, 80 Fed. Reg. 89,693 (Dec. 28, 2023)

[3]  Notice of Estimated Lump Sum Catch-Up Payments to Eligible 1983 Beirut Barracks Bombing Victims and 1996 Khobar Towers Bombing Victims and Planned Methodology; Request for Comment, 89 Fed. Reg. 56,376 (Jul. 9, 2023)

catchup payments for those who submitted eligible applications to the Fund between the date of enactment (Dec. 29, 2022) and June 27, 2023, which is the date the application period closed for catchup payments." *Id.*, at 56,377 n.20.

28.    In the GAO's view, it "cannot calculate lump sum catch-up payments to 1983 Beirut barracks bombing victims and 1996 Khobar Towers bombing victims unless they have submitted an application during the 180-day period from the date of enactment of the Fairness Act." *Id.*, at 56,379 n.33.

29.    Thus, in July of 2024, eligible applicants who had successfully applied to the USVSST Fund prior to the Fairness Act were first made aware that the GAO believed they were expected to have submitted a second, duplicative application to the Fund over a year earlier in order to qualify for a Catch-Up Payment.

30.    This interpretation of the Fairness Act directly contradicts information the USVSST Fund itself provides to applicants: "Claimants do not need to file additional or separate applications for lump sum catch–up payments. Each claimant has one claim before the USVSST Fund for all compensation, including lump sum catch-up payments. The USVSST Fund cannot accept duplicative filings."[4]

31.    It appears that the GAO mistook the provision of '180 days from enactment to submit an application for payment' in 34 U.S.C. § 20144(c)(3)(A)(ii)(II) to mean that every claimant who had previously applied to the USVSST Fund and been deemed eligible would need to apply a second time to receive a Catch-Up Payment, instead of reading the text as

---

[4] U.S. Department of Justice, USVSST: *Frequently Asked Questions 7.1.* Feb. 28, 2025, https://www.usvsst.com/Home/Faq#7.1 (last reviewed March 13, 2025).

simply extending a deadline for the group of individuals who had received a judgment but not yet applied to the USVSST Fund prior to the Fairness Act's enactment.

32.    In fact, the Fairness Act did not add an application requirement specific to the Catch-Up Payments but rather replaced a portion of the 'Deadline for Application Submissions' section as it applies to the entire USVSST Fund, including for regular periodic payments, for new applicants.

33.    Nonetheless, the Comptroller General, acting through the GAO, issued the required report ("Report") on November 1, 2024, which included proposed Catch-Up Payment amounts.[5]

34.    The November 1, 2024, Report by the GAO "Specifically, found that Department of Justice (DOJ) guidance may have discouraged up to 274 eligible Beirut barracks and Khobar Towers bombing victims from applying for lump sum catch-up payments. According to DOJ officials who administer the Fund—which provides compensation to certain U.S. persons injured in acts of international state sponsored terrorism—these claimants may have refrained from submitting applications after contacting the Fund or reviewing its application procedures. Under GAO's interpretation of the Fairness for 9/11 Families Act (Fairness Act), claimants who previously applied and were found eligible to participate in the Fund could still receive catch-up payments but must have submitted applications within the statutory application time frame (December 29, 2022, through June 27, 2023)." Report, in 'Highlights'.

---

[5]    U.S. Gov. Accountability Office, GAO-25-107564, U.S. Victims of State Sponsored Terrorism Fund: *1983 Beirut Barracks and 1996 Khobar Towers Bombing Claimants Due $614 Million*

35.     The GAO included in the Report an October 3, 2024 Memorandum ("Memorandum") from the Department of Justice which was a response to the draft version of the Report and the 2024 Notice. Report, 57-68.

36.     Indeed, the DOJ's position in this Memorandum is that the Fairness Act did not create a separate application process for Catch-Up Payments, but rather the GAO "created a procedure without notice to claimants and unevenly applied its own, non-public requirements." *Id*.

37.     Despite this correction, the GAO's Report stood by the erroneous view that the Fairness Act required victims whose eligible claims had been accepted by the Special Master of the USVSST Fund prior to the enactment of the Fairness Act – like the Plaintiffs – to submit duplicative applications in order to receive these Catch-Up Payments:

> The Fairness Act, in directing the Comptroller General to determine amounts of lump sum catch-up payments, also permitted Beirut barracks bombing and Khobar Towers bombing victims who had previously applied and been deemed eligible for regular distribution payments from the Fund to submit duplicate or successive applications to the Fund in order to apply for these catch-up payments. We refer to applications in this group as "successive applications."
>
> Report at 6.
>
> …
>
> One of the requirements under the Fairness Act to be able to receive a lump sum catch-up payment is that claimants must have "submitted applications" between December 29, 2022 and June 27, 2023. In our interpretation of the Comptroller General's mandate under the Fairness Act, claimants who previously applied to the Fund and were found eligible could still apply for lump sum catch-up payments. Because such claimants are able to receive these payments, we have included them in our payment calculations that are to be used by the Fund to provide lump sum catch-up payments. However, the Fairness Act does not permit GAO to include claimants who did not submit applications during the statutory application time frame in our determination of lump sum catch-up payments, given the Fairness Act's application submission requirement.
>
> Report, at 44 (internal citations omitted).

38.     Through this error, the GAO artificially created a "successive application requirement" which acted as a barrier to prevent those who had already applied to and received eligibility letters from the Fund, including Plaintiffs, from accessing the Catch-Up Payments Congress intended them to receive.

39.     In its Report, GAO identified 274 eligible victims of the Beirut Marine Barracks and Khobar Towers Bombings who had received eligibility letters prior to the enactment of the Fairness Act but did not submit duplicative applications to the Fund and therefore, in its view, could not receive the Catch-Up Payments intended for them by the Fairness Act ("Excluded Eligible Claimants"). *Id*. at 23.

40.     Plaintiffs are among these Excluded Eligible Claimants.

41.     Despite the GAO's position that duplicative applications were required, the GAO included in its report computed lump sum catch-up payment amounts for the 274 Excluded Eligible Claimants whose applications were submitted to the USVSST Fund prior to December 29, 2022 "[to] ensure that the Fund can identify these claimants and make payments if the statute is amended…" *Id*. at 20.

42.     Under the GAO's calculations a maximum of approximately $730 million in Catch-Up Payments would be authorized to eligible 1983 Beirut Marine Barracks and Khobar Towers Bombing victims, including approximately $116 million in Catch-Up Payments to the 274 claimants obstructed by the GAO's duplicate application requirement.

43.     As a result, between $2.270 billion and $2.386 billion will be deposited into the Fund upon total disbursement of Catch-Up Payments to eligible 1983 Beirut Marine Barracks and Khobar Towers Bombing victims.

**The Special Master's Fund Procedures Must Conform with the Fairness Act**

44. The Special Master viewed the GAO's Report as conclusive with respect to "which 1983 Beirut barracks bombing victims and 1996 Khobar Towers bombing victims are eligible" for Catch-Up Payments under the Fairness Act,[6] but she did not alter the Fund's procedures to permit duplicative applications. *USVSST: Frequently Asked Questions ("FAQs") 7.3*, *supra*.

45. As a result of the GAO's position that they could not include the Excluded Eligible Claimants in their determination of Catch-Up Payments, the Special Master mistakenly withheld authorization of Catch-Up Payments to the Excluded Eligible Claimants, including the Plaintiffs.

46. The Fairness Act required the Special Master to update Fund procedures and Guidance to conform to the Fairness Act within 30 days of its enactment. 34 U.S.C. § 20144(b)(2)(A).

47. Prior to the Fairness Act's enactment, the Fund's procedures prohibited the submission of more than one application by a claimant.

48. The Special Master did not change Fund procedures in response to enactment of the Fairness Act to require filing a duplicate, identical application for eligibility for Catch-Up Payments. Therefore, the published position of the Fund that once an applicant's eligibility to the Fund was determined, such applicant automatically became eligible for both regular distributions and catch-up distribution. Furthermore, the prohibition on submitting multiple applications remained in effect during the 180 day period subsequent to enactment of the Fairness Act, and remains in effect until today.

---

[6] U.S. Department of Justice, USVSST: *Frequently Asked Questions ("FAQs") 7.3*. Feb. 28, 2025, https://www.usvsst.com/Home/Faq#7.3 (last reviewed March 13, 2025).

49.     The Special Master refused to accept second applications submitted by 1983 Beirut Bombing Victims and 1996 Khobar Towers Bombing victims in response to the lump sum catch-up provisions of the Fairness Act.

50.     Plaintiffs do not challenge any written decision of the Special Master made in accordance with 34 U.S.C. § 20144(b)(3). Plaintiffs do not challenge the one-time determination of their eligibility, which was decided favorably by the Special Master in accordance with published Fund procedures. Plaintiffs do not challenge any decision of the Special Master regarding the methodology for computing payments, or the Special Master's computation of individual payments. Plaintiffs do not challenge the methodology by which the Comptroller General computed the proposed lump sum catch-up payments at issue here, or the specific amounts of those payments as computed by the Comptroller General.

51.     Adjudication of Plaintiffs' claims in this case is entirely independent of—and will have no effect on—the timing and amount of catch-up payments to be made to other victims of the 1983 Beirut barracks bombing or the 1996 Khobar Towers bombing.

52.     In the alternative, Plaintiffs plead that if the Court were to find that the Fairness Act did in fact require submission of additional applications by Plaintiffs in order to qualify to receive Catch-Up Payments, then it was unlawful and an abuse of discretion for the Special Master to have failed to change Fund procedures to permit Plaintiffs to submit successive applications.

53.     By requiring the Special Master to conform Fund procedures and guidance to the Fairness Act, Congress was clear that the substantive matter of the receipt of Catch-Up Payments was to be determined by the terms of the Act, not by preexisting agency routine.

15

54.    If a second application were determined to be required from those victims who had been deemed eligible by the Special Master prior to the Fairness Act's enactment in order for them to receive Catch-Up Payments, the Court should find that:

    a.  Good cause exists to extend or in the alternative to allow a separate deadline to submit such additional applications that were foreclosed by the Fund's procedures before the deadline expired. *See* 34 U.S.C. § 20144(c)(3)(B) ("For good cause shown, the Special Master may grant a claimant a reasonable extension of a deadline under this paragraph.").The Fairness Act Requires that Lump Sum Catch-Up Payments Be Authorized for Plaintiffs in the Amounts Computed by the Comptroller General

55.    There is no practical or legal impediment to the Special Master authorizing the Catch-Up Payments contemplated by the Fairness Act and calculated by the GAO for Plaintiffs. Fairness requires all Khobar Towers victims who were determined eligible by the Fund to be treated equally, without the arbitrary exclusion of 274 eligible Khobar Towers terrorist attack victims.

56.    DOJ has specifically found that there is no information needed to be supplied in an additional application to facilitate catch-up payments as all information is contained in the single application submitted by each eligible claimant. Report at 63, n.10.

57.    GAO computed the lump-sum catch-up payment amounts for Plaintiffs and included those amounts in his Report to the Special Master and Congressional Committees.

58.    Because those amounts are properly set forth in the Report specified by 34 U.S.C. § 20144(d)(1)(D)(iii), the Special Master was required to authorize catch-up payments for the Plaintiffs.

59.    The Fairness Act charged GAO only with auditing the Fund, publishing notice of computational methodology, and issuing a report with catch-up payment amounts. GAO was not otherwise delegated any responsibility for interpreting the statute. The Special Master is not bound by GAO's incorrect interpretation regarding the procedural requirement for a duplicative application.

**Judicial Review Under the Administrative Procedure Act**

60.    Under the Administrative Procedure Act, this Court is to "decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action." 5 U.S.C. § 706.

61.    This Court is empowered to "compel agency action unlawfully withheld or unreasonably delayed," and "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." *Id*. at §§ 706(1), (2)(A), (C).

62.    "Agency action" includes an agency's "failure to act." See 5 U.S.C. § 701(b)(2); 5 U.S.C. § 551(13).

63.    With regard to the actions alleged herein and for the purposes of the Administrative Procedure Act, the Special Master, Department of Justice, and GAO are agencies.

## COUNT I
**Plaintiffs Were Not Required to Submit Duplicative Applications To Be Authorized**
**Lump Sum Catch-Up Payments In the Amounts Computed by the Comptroller General**
Administrative Procedure Act
Declaratory Judgment Act
Mandamus Act
(Injunctive and Declaratory Relief Against Defendants)

64.     Plaintiffs repeat and reallege the foregoing allegations set forth above as if fully set forth herein.

65.     Authorization for lump sum catch-up payments has unlawfully been withheld for Plaintiffs as a result of the Comptroller General's incorrect conclusion that Plaintiffs (and others similarly situated) would have to submit duplicative applications to receive such payments under the Fairness Act.

66.     The Comptroller General's conclusion is based upon an incorrect interpretation of the Fairness Act.

67.     Plaintiffs request that this Court declare that the Fairness Act requires the Special Master to authorize lump sum catch-up payments for each 1983 Beirut barracks bombing victim and 1996 Khobar Towers bombing victim, as those terms are defined by the Fairness Act in amounts set forth in the Comptroller General's Report of November 1, 2024.

68.     Plaintiffs request that this Court order the Special Master to authorize catch-up payments for Plaintiffs in the amounts computed by the Comptroller General.

<u>COUNT II</u>
**GAO's Interpretation of the Audit-and-Publish Provision of the Fairness Act Does Not Limit the Scope of the Special Master's Obligation to Authorize Catch-Up Payments**
Administrative Procedure Act
Declaratory Judgment Act
(Declaratory Relief Against Defendants)

69.     Plaintiffs repeat and reallege the foregoing allegations set forth above as if fully set forth herein.

70.     In its November 1, 2024 report, GAO proffered an (incorrect) interpretation of the Fairness Act's audit-and-publish provision (34 U.S.C. § 20144(d)(4)(D)(i)).

71.     GAO incorrectly concluded that the audit-and-publish provision indirectly limited the scope of the Special Master's statutory obligation to authorize catch up payments (34 U.S.C. § 20144(d)(4)(D)(iv)).

72. Plaintiffs request that this Court declare that the audit-and-publish provision of the Fairness Act does not limit the scope of the Special Master's statutory obligation to authorize catch up payments.

<u>COUNT III</u>
**The Special Master Is Required to Authorize Catch-Up Payments to Plaintiffs**
Administrative Procedure Act
Declaratory Judgment Act
Mandamus Act
(Injunctive and Declaratory Relief Against Defendants)

73.     Plaintiffs repeat and reallege the foregoing allegations set forth above as if fully set forth herein.

74.     The Special Master has unlawfully withheld actions required by the Fairness Act, and/or engaged in agency action that is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, and/or in excess of statutory jurisdiction, authority, or limitations, or short of statutory right.

75.     Specifically, the Special Master has failed to comply with the statutory requirement to "authorize lump sum catch-up payments from the reserve fund . . . in amounts equal to the amounts described in subclauses (I) and (II) of clause (iii)" as to each Plaintiff. 34 U.S.C. § 20144(d)(4)(D)(iv)(II) (emphasis added).

76.     Plaintiffs request this Court declare that the Special Master must authorize payments for each 1983 Beirut barracks bombing victim and 1996 Khobar Towers bombing victim, as those terms are defined by the Fairness Act in amounts set forth in the Comptroller General's Report of November 1, 2024.

77.     Plaintiffs further request that the Court order the Special Master to authorize catch-up payments for Plaintiffs in the amounts computed by the Comptroller General

<u>**COUNT IV**</u>
**The Special Master Was Required To Change Fund Procedures To Conform to Statutory Requirements**
Administrative Procedure Act
Declaratory Judgment Act
Mandamus Act
(Injunctive and Declaratory Relief Against Defendants)

78.     Plaintiffs repeat and reallege the foregoing allegations set forth above as if fully set forth herein.

79.     In the alternative (should the Court find that the Fairness Act required the submission of duplicative applications for lump-sum catch up payments or that it cannot review the government's interpretation of that provision), Plaintiffs allege that the Special Master acted unlawfully, arbitrarily, and capriciously by failing to update Fund procedures and guidance to allow for the submission of such applications after enactment of the Fairness Act.

80.     Plaintiffs request that the Court remedy this statutory violation by declaring that the Special Master was required as a result of the Fairness Act to modify Fund procedures to allow

1983 Beirut barracks bombing victims and 1996 Khobar Towers bombing victims to submit additional applications for lump sum catch-up payments, and that there is good cause under the statute to extend the statutory deadline for a reasonable period of time following the issuance of such procedures.

81. Plaintiffs further request that the Court order the Special Master to issue such procedures and accept additional applications for catch-up payments.

**COUNT V**
**Preservation of Reserve Funds for the Duration of this Case**
Administrative Procedure Act
(Injunctive Relief Against Defendants)

82. Plaintiffs repeat and reallege the foregoing allegations set forth above as if fully set forth herein.

83. Congress appropriated $3 billion to a reserve fund within the larger Fund to be used for the disbursement of lump sum catch-up payments to 1983 Beirut barracks bombing victims and to 1996 Khobar Towers bombing victims, including the Plaintiffs.

84. The lump sum catch-up payment reserve fund may be terminated after the Special Master disperses all lump sum catch-up payments, and it must be terminated not later than 1 year thereafter.

85. Upon termination, all amounts remaining in the reserve fund are to be deposited into the Fund. Once deposited into the Fund, funds are unavailable for lump-sum catch-up payments.

86. If the reserve fund is terminated and all of its funds are deposited into the Fund, Plaintiffs would be unable to be disbursed lump-sum payments even if their claims are otherwise meritorious.

87.     This Court may issue orders necessary to "preserve status or rights pending conclusion" of this case. 5 U.S.C. § 705.

88.     Plaintiffs seek such an order to preserve the availability of funds necessary to disburse their catch-up payments should they prevail in this case.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that the Court grant relief and a judgment in their favor and against the Defendants: (1) Providing the declaratory and injunctive relief requested in Counts I through V above; (2) Awarding Plaintiffs reasonable attorney's fees and other costs; and (3) Such other and further relief as this Honorable Court may determine to be just and appropriate under the circumstances.

Respectfully submitted this 28th day of March 2025.

/s/ Thomas F. DellaFera, Jr.
Thomas F. DellaFera, Jr. Bar No. 1032671
**Miller DellaFera PLC**
3420 Pump Road | PMB 404
Henrico, VA 23233
Telephone: (800) 401-6670

Gavriel Mairone, Bar No. 156461
**MM~LAW LLC**
875 North Michigan Avenue, Suite 3100
Chicago IL 60611
Telephone: (312) 253-7444

**ATTORNEYS FOR THE PLAINTIFFS**